IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Larry Cherry, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09-CV-4825 |
| v. | ) | |
| | ) | Judge James B. Zagel |
| AssetAcceptance, Inc., Bally's Inc., First | ) | Magistrate Judge Susan E. Cox |
| Premier Inc., Commonwealth Edison, CBE | ) | |
| Group Inc. and Jutla Sanjay, Individually, | ) | |
| Illinois Collection Services Inc., Havard | ) | |
| Collections Inc., Nationwide Credit and | ) | |
| Collections Inc., and HSBC Bank Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT FIRST PREMIER'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant First PREMIER Bank, named as First Premier Inc. (hereafter "First Premier")

seeks dismissal of Plaintiff Larry Cherry's ("Cherry's") complaint with prejudice pursuant to

Federal Rule of Civil Procedure 12(b)(6).  First Premier states in support of its motion as

follows:

**INTRODUCTION**

Plaintiff Cherry's current complaint ("2009 Complaint") is barred by res judicata because

the allegations in the 2009 Complaint duplicate those made in a dismissed 2005 complaint

against First Premier ("2005 Complaint").  Alternatively, the claims made in Cherry's 2009

Complaint are barred by the applicable statutes of limitations for each claim asserted.

**BACKGROUND**

I)      **The Allegations of the 2005 Complaint**.

On August 12, 2005, Cherry filed a complaint in this Court against First Premier Inc. and

other defendants, styled, *Larry Cherry v. Debt Recovery Solutions Inc., et al.,* Case No. 05-CV-

4622 (the "2005 Complaint").  (A copy of the 2005 Complaint is attached hereto for reference as

Exhibit A.)  Count Four of the 2005 Complaint alleged claims against First Premier for

misrepresentation, violations of the Fair Credit Reporting Act, and violation of the Uniform

Commercial Code.  *See* Ex. A, 2005 Complaint, ¶¶51-60.

Cherry's 2005 Complaint alleged a series of "Factual Allegations" common to all

defendants, including:

- "… First Premier Inc. … ha[s] made derogatory reports to one or more of the major three credit bureaus in the name of Plaintiff Cherry."  Ex. A, 2005 Complaint, ¶ 12.

- Cherry "sent certified communications to the credit bureau and to each defendant to rectify the incorrect reporting" and that "[t]o date all listed Defendants have refused to remove their erroneous reporting."*Id.* at ¶¶ 13-14.

- That "[a]ll Defendants have willfully, intentionally,  negligently, and repeatedly verified erroneous information to Plaintiff's credit" and that  "[d]efendants have been reporting derogatory and inaccurate statements relating to plaintiff's credit history."  *Id.* at ¶¶ 15-16.

- That " [t]he inaccurate information" of which Cherry complained was "an account or tradeline" and that "however, the Defendants have disseminated credit reports that the information is reported correctly.  *Id.* at ¶ 18.

- That "[t]he inaccurate information negatively" reflected upon Cherry's "credit repayment history," Cherry's "financial responsibility as a debtor" his "credit worthiness" and that "[t]he credit reports have been and continue to be disseminated to various persons and credit grantors both known and unknown." *Id.* at ¶¶ 19 and 20.

- That "Defendant has continued to publish the inaccurate information to various third parties, persons, entities and credit grantors."  *Id.* at ¶ 21.

- That "[d]espite Plaintiff's efforts to date, defendant has nonetheless deliberately, willfully, wantonly, intentionally, recklessly, negligently continued to report this information as belonging to the plaintiff."  *Id.* at ¶ 22.

Cherry alleged that the foregoing conduct had damaged him in the form of denial of

credit, out of pocket expenses associated with disputing the information, emotional distress and

mental anguish associated with having incorrect derogatory information transmitted to people both known and unknown and  a decreased credit score which might result in Cherry's "inability to retain credit on future attempts." *Id.* at ¶ 23.  Cherry also alleged, "[a]ll times hereto, the conduct of the defendant, as well as that of their agents, servants and/or employees was malicious, willful, intentional reckless, and in grossly negligent disregard for the federal and state laws and the rights of the plaintiffs herein." *Id.* at ¶ 24.

A)    **Count Four of the 2005 Complaint Against First Premier.**

Cherry alleged in Count IV of the 2005 Complaint that First Premier had issued a credit card to him in 2004 with a $500 credit limit, but upon which there was a "charge of $239.00 for various fees." *Id.* at ¶¶ 52-53.   Accordingly, Cherry alleged that he "sent a payment of $4,000.00 to increase [the] credit limit and pay off [the] balance within 90 days of receiving [the] card." *Id.* at ¶ 54.  Cherry alleged that First Premier, "refused to credit said account and never returned the payment." *Id.* at ¶55.  Cherry then alleged that "[t]he account is paid in full due to Defendant's refusal to apply valid payment" (*Id.* at ¶57); and that First Premier  "continued to report the account with a remaining balance and bearing late payments" (*Id.* at ¶58).  Cherry also included the nonsensical allegation:  "[a]ccording to 3:603 of the Uniform Commercial Code 'a tender of amount.'" *Id.* at ¶ 56.  As noted below, four years later Cherry completed his thought on this allegation in the 2009 Complaint.

Finally, Cherry alleged that "First Premier willfully and negligently failed to conduct a reasonable and proper investigation concerning the accuracy of the information after receiving notice of the dispute from the Plaintiff, in violation of 15U.S.C. 1681i(a)." *Id.* at ¶ 59.  He also alleged that "[t]he conduct of defendant was a direct and proximate cause, as well as a substantial factor, in bringing about injuries, damages and harm to the Plaintiff that are outlined

3

more fully above, and as a result Defendants are liable to the Plaintiff for the full amount of the actual, statutory and punitive damages along with attorney's fees and the costs of litigation, as well as such other relief, as may be permitted by law." *Id.* at ¶ 60.

**B)      Judge Holderman dismisses the 2005 Complaint.**

On August 15, 2005, the Court (Holderman, J.) *sua sponte* dismissed Plaintiff's 2005 Complaint. The Court issued a written order in which it described Plaintiff's claims as follows: "Cherry's complaint alleges that the defendants have made derogatory and incorrect statements about his bill payment history to the three major credit reporting bureaus. These allegedly false statements have impacted his credit score and overall financial health. Cherry seeks an order from this court directing the defendants to stop reporting this information, delete the inaccurate information from his credit report and monetary damages." Ex. B, 2005 Dismissal Order, at 1.

The Court dismissed Cherry' 2005 Complaint because he had failed to state a claim upon which relief may be granted. The Court noted that "[a]lthough the FCRA 'creates a private right of action against a consumer reporting agency . . . there is no private right of action for a plaintiff alleging that a business has provided incorrect credit information . . . , unless the business has received 'notice from the consumer reporting agency that a consumer is disputing the credit information.'" *Id.* at 1-2 (citations omitted). The Court observed that Cherry "only alleges that he has communicated the disputed credit information directly to the defendant businesses" and that Cherry did not allege any "communication from the consumer reporting agency to the defendants." *Id.* at 2. The Court concluded that "[t]he appropriate disposition is to dismiss Cherry's present complaint but with leave to file an amended complaint that brings a claim under the FCRA." *Id.* Specifically, the Court ruled that Cherry had leave to file an amended complaint no later than September 15, 2005, if he could do so consistent with the requirements of Federal

Rule of Civil Procedure 11" *Id.* The docket for Case No. 05-CV-4622 shows that Plaintiff

neither filed an amended complaint, nor anything else following the Court's 2005 dismissal.

**II)**  **The Allegations of the 2009 Complaint Against First Premier Are Virtually the Same as the Dismissed Allegations of the 2009 Complaint.**

On August 26, 2009, Cherry filed a new complaint against First Premier Inc. and other

defendants, styled, *Larry Cherry v. AssetAcceptance Inc., et al.,* Case No. 09-CV-4825 (2009

Complaint).  Similar to the 2005 Complaint, the 2009 Complaint alleges claims against First

Premier for fraud, violation of the Truth in Lending Act, misrepresentation, violations of the Fair

Credit Reporting Act, and violation of the Uniform Commercial Code.  *See* 2009 Complaint,

Counts Two & Four.  As set forth in the attached Table as Exhibit C, the allegations of the 2009

Complaint against First Premier are virtually identical to those made against First Premier in the

2005 Complaint. (Exhibit A.)

**A)**  **Count Four of the 2009 Complaint is virtually the same.**

In particular, Count Four of the 2009 Complaint contained virtually the same allegations

made by Cherry in Count Four of his 2005 Complaint.  For example, as he did in the 2005

Complaint, Cherry alleged that First Premier issued a credit card to him in 2004 with a $500

credit limit, but upon which there was a "charge of $239.00 for various fees." *Id.* ¶¶ 48-49.

Exactly like the 2005 Complaint, Cherry alleged that he "sent a payment of $4,000.00 to increase

[the] credit limit and pay off [the] balance within 90 days of receiving [the] card."  *Id.* at ¶ 50.

Just as in the 2005 Complaint, Cherry then alleged that First Premier, "refused to credit said

account and never returned the payment." *Id.* at ¶ 51.  Exactly like he did in 2005, Cherry also

alleged as such that "[t]he account is paid in full due to Defendant's refusal to apply valid

payment" (*Id.* at ¶ 53); and that First Premier  "continued to report the account with a remaining

balance and bearing late payments" (*Id.* at ¶54).  Finally, Cherry completed the nonsensical

allegation of his 2005 Complaint by alleging: "[a]ccording to 3:603 of the Uniform Commercial Code 'a tender of amount' refused constitutes satisfaction of the amount tendered." *Id.* at ¶ 52.

Finally, Cherry alleged as he did virtually verbatim in 2005 (with the exception of one word as noted, that "First Premier willfully and negligently failed to conduct a reasonable and proper investigation concerning the accuracy of the information after receiving notice of the dispute from the Plaintiff, in **dispute [versus violation]** of 15 U.S.C. 1681i(a)." *Id.* at ¶ 55. Finally, Cherry alleged exactly as he had done in the 2005 Complaint that "[t]he conduct of defendant was a direct and proximate cause, as well as a substantial factor, in bringing about injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result Defendants are liable to the Plaintiff for the full amount of the actual, statutory and punitive damages along with attorney's fees and the costs of litigation, as well as such other relief, as may be permitted by law." *Id.* at ¶ 56.

**B)    Count Two of the 2009 Complaint.**

Cherry added an additional count (Count Two) against First Premier in the 2009 Complaint for alleged fraud and under the Truth in Lending Act. Count II adds the interesting twist of Cherry apparently admitting that the $4,000 payment he claimed in Count Four being converted into a document with a "presumed value of $4,000" which was "designed" by Cherry and "not drawn on any bank."

Specifically, Cherry alleges in Count II that "Defendant First Premier Bank was a credit account opened by Plaintiff over the Internet" and that "Defendant First Premier Bank represented to Plaintiff that he would receive a credit card with a $600.00 limit." *Id.* at ¶ 24-25. Cherry also alleges in Count Two that "[w]hen Plaintiff received the card, $280 dollars had already been put on it by First Premier themselves"; that "Defendant First Premier Bank

represented in their internet advertisement that the APR was somewhere between 20 and 30%.";
and that "[t]he actual APR was more than double that amount because the finance charges
already charged in advance on the card was not computed in the APR." *Id.* at ¶ 26-28.

Cherry also alleged in Count Two, that "First Premier Bank did not adequately inform
Plaintiff that the card came 'pre-charged'" and that he "protested the protested the 'pre-charge'
on numerous occasions to no avail." *Id.* at ¶¶ 29-30.  Cherry then alleges he "sent a document
that was not drawn on any bank stating a presumed value of $4,000.00 dollars." *Id.* at ¶ 31.  He
states that "First Premier Bank did not return the negotiable instrument designed by the Plaintiff"
and that "[s]ince Defendant First Premier Bank did not return it they accepted it by default." *Id.*
at ¶¶ 32-33.  Plaintiff then contends, "[t]he account was considered paid in full by Plaintiff and
basic contract law precepts of offer and acceptance." *Id.* at ¶ 34.

Cherry added that "First Premier Bank has maintained regularly derogatory reportings to
credit bureau stating that Plaintiff owes a balance on said account." *Id.* at ¶ 35.  Cherry then
makes the same allegation that appears in paragraph 55 by alleging that "First Premier willfully
and negligently failed to conduct a reasonable and proper investigation concerning the accuracy
of the information after receiving notice of the dispute from the Plaintiff, in violation of 15
U.S.C. 1681i(a)." *Id.* ¶ 36.  Plaintiff then makes the same allegation that appears in paragraph 56
by asserting that "[t]he conduct of defendant was a direct and proximate cause, as well as a
substantial factor, in bringing about injuries, damages and harm to the Plaintiff that are outlined
more fully above, and as a result Defendants are liable to the Plaintiff for the full amount of the
actual, statutory and punitive damages along with attorney's fees and the costs of litigation, as
well as such other relief, as may be permitted by law." *Id.* ¶ 37.

C)    <u>2005 and 2009 Complaints seek same relief.</u>

Finally, the prayers for relief that Plaintiff sets forth for Count Four of the 2005

Complaint, as well as for both Counts Two and Four of the 2009 Complaint are identical.

<u>ARGUMENT</u>

On either preclusion or limitations grounds, the Court should dismiss the present lawsuit

pursuant to Rule 12(b)(6).

I.    <u>Plaintiff's claims are barred by res judicata.</u>

"For *res judicata* to apply, the following three elements must exist: (1) a final judgment

on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and later

suit, and (3) an identity of parties or privies in the two suits." *Sanders v. Venture Stores, Inc.*,

899 F. Supp. 387, 388 (N.D. Ill. 1995) (citing *Smith v. City of Chicago*, 820 F.2d 916, 917 (7th

Cir. 1995)). [1]  Each element exists here.

A.    <u>The dismissal of the 2005 action was a judgment on the merits.</u>

The Court's August 15, 2005 order dismissing Cherry's 2005 Complaint became a

judgment on the merits when Cherry failed to amend his complaint or take any further action in

that case.  Federal Rule of Civil Procedure 41(b) states that "Unless the dismissal order states

otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule …

operates as an adjudication on the merits."  The Court's August 15, 2005 dismissed Cherry's

complaint for failure to state a claim and therefore it operates as an adjudication on the merits.

*See Davis v. Lambert*, 388 F.3d 1052, 1058 (7th Cir. 2004) ("dismissal for failure to state a claim

---

[1] Because the first judgment at issue here was from a federal court, federal rules of res judicata apply.  *Havoco of America, Ltd. v. Freeman, Atkins & Coleman*, 58 F.3d 303, 307 n.7 (7th Cir. 1995).

is a decision on the merits"); *see also Rinehart v. Locke*, 454 F. 2d 313, 315 (7th Cir. 1971) (dismissal order need not include the words "with prejudice" to have res judicata effect).

Although the August 15, 2005 order gave Cherry leave to file an amended complaint "no later than September 15, 2005," the order became final when that date came and went without Cherry filing an amended pleading or taking any other action in the case. *See Otis v. City of Chicago*, 29 F.3d 1159, 1166 (7th Cir. 1994) ("finality spring[s] into existence when the time to satisfy the condition expires"); *see also Davis v. Advocate Health Center Patient Care Express*, 523 F.3d 681, 683 (7th Cir. 2008) (citing *Otis*) ("When a judge conditionally dismisses a suit, but gives the plaintiff time to fix the problem that led to dismissal (here, the payment of the filing fee), the order becomes an appealable 'final decision' once the time for correction has expired, whether or not the court enters a final judgment.").

**B.    There is an identity of claims in the 2005 and 2009 suits**.

Cherry's allegations in the 2005 Complaint and the 2009 Complaint show that there is an identity of claims between the two suits. This is clear from the titles of his counts, the factual allegations, and the nature of his claims.

First, the titles of his claims show an identity of actions. Cherry titled his claims in Count Four of the 2005 Complaint against First Premier as "Fraud, Misrepresentation, FCRA Violations, Violation of U.C.C. 3:603." Cherry titled his claims in Count Four of the 2009 Complaint against First Premier exactly the same. The only differences Cherry has introduced in the 2009 Complaint appear in Count II of the 2009 Complaint. There, in addition to reasserting "Fraud," he also claims "Truth in Lending Violation."

Second, as the attached Table shows (Ex. C), Plaintiff's "Factual Allegations" and the allegations of Counts Four in both complaints are virtually identical.

Third, the addition of a "Truth in Lending Violation," under Count Two does not change the fact that there is an identity of the 2005 and 2009 actions. "Claim preclusion, or res judicata, prevents parties from relitigating claims that were *or could have been brought* in an earlier lawsuit that resulted in a final judgment on the merits." *Cole v. Bd. of Trs. for the Univ. of Ill.,* 497 F.3d 770, 772-73 (7th Cir. 2007) (emphasis added). All of the allegations and claims that appear in the 2009 Complaint arise out of the same set of facts that Plaintiff set forth in the 2005 Complaint. Indeed, as noted above, Cherry appears to be admitting through Count Two of the 2009 Complaint that his claimed $4,000 payment was a document "designed" by Cherry with a "presumed value of $4,000" which was "not drawn on any bank." As such, all of the claims Plaintiff asserts in the 2009 Complaint are barred by res judicata.

### C.    There is an identity of parties in the 2005 and 2009 suits.

Cherry sued First Premier in both actions. Therefore, there is an identity of parties for purposes of res judicata analysis. Because all three requirements for res judicata are met, the Court must dismiss Cherry's claims against First Premier Bank with prejudice.

### II.    In any event, Plaintiff's claims are barred by the applicable statutes of limitations.

Plaintiff obtained a credit card from First Premier on or about February 21, 2003. (*See* Ex. C, Affidavit of Lauri Jackson, ¶ 3.)[2] He alleges violations arising in connection with the credit card fees he was assessed and alleged derogatory reports to the three major credit bureaus. Plaintiff filed the present action on August 26, 2009. (*See* Dkt. No. 7.)

**FCRA claim.** A claim for violation of the FCRA must be brought "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such

---

[2] Even by the allegations appearing in Plaintiff's complaint, the statutes of limitations began running no later than 2004.

liability occurs." 15 U.S.C. § 1681p. We know from his 2005 Complaint, that the Plaintiff had certainly discovered the violation he claims by 2005. Thus, according to 15 U.S.C. § 1681p(1), Plaintiff needed to bring his FCRA claim by no later than August 12, 2007.

**TILA claim.** A claim for violation of the TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Asher v. Chase Bank USA, N.A.*, 310 Fed. Appx. 912, 916, 2009 WL 465083, at *3 (N.D. Ill. Feb. 20, 2009) (same, citing § 1640(e)). The most generous reading of Plaintiff's allegations shows that the alleged violation that is the subject of his claim occurred no later than 2004. Thus, any TILA claim should have been brought no longer than a year later. Because Plaintiff waited until 2009 to assert a TILA claim, it is barred by 15 U.S.C. § 1640(e).

**U.C.C. claim.** Plaintiff alleges he "sent payment of $4,000.00 to increase credit limit and pay off balance within 90 days of receiving card." (2009 Complaint, ¶ 50.) Because Cherry receive the card on or about February 21, 2003 and his first statement had a closing date of February 25, 2003, this means that Cherry had to have sent the payment by the end of May 2003. (Ex. D, Lauri Affidavit at ¶¶4-5.) The UCC's default limitations period is four years. SDCL § 57A-2-725(1).[3] Thus, Plaintiff's U.C.C. claim is barred because he should have brought it by May 2007.[4]

**Fraud/misrepresentation claim.** The South Dakota statute of limitations for common law fraud is six years. SDC § 15-2-13(6).[5] The Affidavit of Lauri (Ex. 2) shows that Plaintiff

---

[3] *See also* 810 ILCS 5/2-725(1) (UCC default limitations period is four years); *Deere & Co. v. Ohio Gear*, 462 F.2d 701, 708 (7th Cir. 2006) (citing same).

[4] Even if one relies on Plaintiff's allegations that First Premier issued him a credit card in 2004 and that he made the alleged payment within 90 days thereafter, the alleged payment would still be more than four years before he filed the 2009 Complaint.

[5] Under Illinois law, the statute of limitation for common law fraud is five years. *See* 735 Ill. Comp. Stat. 5/13-205.

received his card and his first statement reflecting the credit card fees about which he now complains by the end of February 2003.  Thus, when he filed claims for fraud and misrepresentation in August 2009, they were untimely.

## CONCLUSION

"That [Plaintiff Cherry] bolixed his opportunity [to receive an adjudication of the claims he filed in his 2005 action] by . . . failing to prosecute it properly does not justify exposing the defendant to another round."  *American Nat'l Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1553 (7th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987).

**WHERFORE,** Defendant First PREMIER Bank requests an order from this Court granting its motion to dismiss Plaintiff's complaint against First PREMIER Bank with prejudice and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

Dated:  October 15, 2009                     FIRST PREMIER BANK

By:    /s/ Kevin B. Duff

Kevin B. Duff
Edwin L. Durham
Darnella J. Ward
Rachlis Durham Duff & Adler, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
phone: 312-733-3950
fax:    312-733-3952