# EXHIBIT B

M-83723 ACB $10/$50 10/06

## APPLIED CARD BANK℠ CREDIT CARD AGREEMENT

In this Credit Card Agreement ("Agreement") "we," "us," "our" and "Bank" refers to Applied Card Bank of Wilmington, Delaware. "You," "your" and "yours" refer to the person or persons who requested a Visa® or MasterCard® credit card account ("Account"). This Agreement governs your Account. It supersedes and replaces any prior agreement you may have with us. This Agreement (or any prior credit card agreement we provided to you) became effective when your Account was approved. If you do not agree to abide by the terms of this Agreement, you must terminate your Account, in the manner provided in this Agreement, before you attempt to obtain the first Cash Advance or Purchase on your Account or otherwise use your Account. If you terminate your Account within 30 days of the date it is opened we will issue a credit to your Account for any fees or Finance Charges we assess and charges for goods or services provided by our affiliated companies.

**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT MAY SUBSTANTIALLY LIMIT OR AFFECT YOUR RIGHTS. AS SET FORTH IN THE ARBITRATION PROVISION, YOU MAY EXCLUDE YOURSELF FROM THE ARBITRATION PROVISION WITHOUT AFFECTING YOUR RIGHT TO CREDIT OR ANY OTHER TERMS OF THIS AGREEMENT IF YOU PROMPTLY SEND US A WRITTEN NOTICE. PLEASE READ THE ARBITRATION PROVISION CAREFULLY AND KEEP IT FOR YOUR RECORDS.**

**Definitions.** Other defined terms used in this Agreement include:

1. "**ATM**" means any automated teller machine.

2. "**Authorized User**" means anyone you authorize to use the Card (or any other credit device we supply to you) or your Account to obtain credit. If you request, and at our discretion, we may issue an additional Card in the name of the Authorized User with your Account number. You agree to be obligated for all credit obtained by the Authorized User as if that credit were obtained by you, including credit for which you may not have intended to be liable.

3. "**Billing Cycle**" means a monthly billing period, which begins on or about the same day of each month.

4. "**Card**" means the card(s) issued in connection with your Account.

5. "**Cash Advance Check**" means Visa Check, MasterCard Check or any other checks, drafts or written instruments we supply to you to obtain a Cash Advance on your Account.

6. "**Cash Advance**" means credit you or an Authorized User obtain on your Account in any of the following ways:

(a) by drawing a Cash Advance Check on your Account,

(b) by presenting the Card (or any other credit device we supply to you) to us or to any other participating MasterCard or Visa financial institution or other provider, to obtain cash or to make a transfer from your Account to any other deposit or loan account you have with us or to make any other transactions that involve the purchase of items that are readily convertible to cash or similar transactions including, but not limited, to money orders, stamps, travelers cheques, bail bonds, tax payments and gaming transactions (it being understood that you will only engage in gaming transactions where lawful),

(c) by using the Card at an ATM or other device available for this purpose, to obtain cash or to make a transfer from your Account to any other deposit or loan account you have with us,

(d) by incurring certain fees which may be billed as a Cash Advance for billing purposes such as the Account Origination Fee, Cash Advance Fee Finance Charge, Credit Line Increase Fee, Upgrade Fee and any other fee defined in this Agreement or otherwise disclosed to you as a Cash Advance.

7. "**Closing Date**" means the last day of any Billing Cycle.

8. "**Credit Limit**" means the maximum amount of credit we have approved for you on your Account.

9. "**Deposit**" means the statement savings account that you may maintain with us at any time in connection with your Account. The Deposit is subject to our regular Statement Savings Account Deposit Rules and Regulations (the "Rules") which are in effect (as may be amended from time to time) and which are included with this Agreement. Information described in the Truth-in-Savings disclosures of the statement savings account has been or will be sent to you if and when you open the Deposit. Your Deposit will secure all credit you now have or later obtain on your Account, as well as our charges.

10. "New Balance" means the outstanding balance in your Account at the end of any Billing Cycle. The New Balance is the sum of the Previous Balance shown on your Statement, less payments and credits, plus new Cash Advances and Purchases and our charges (including Finance Charges) posted during the Billing Cycle.

11. "POS" means point of sale.

12. "Purchase" means credit you or an Authorized User obtains on your Account, when you present the Card, or Card number, to a merchant honoring the Card or use the Card at a POS terminal to purchase goods and/or services. A Purchase also includes any fee listed in the "Our Charges" portion of this Agreement and any other fee, Finance Charge, or other transaction billed to your Account (for example, credit insurance) that is not a Cash Advance.

13. "Statement" means a statement of your Account which we will send to you at the end of any Billing Cycle in which we owe you or you owe us more than $1, or we impose any charge (including Finance Charges), or any payment, credit, Cash Advance or Purchase is posted to your Account.

**Using Your Account To Obtain Credit.** You can use the Card and your Account to make Purchases and obtain Cash Advances at any time, as long as you are not in Default and your credit privileges have not been terminated. We may also allow Purchases or Cash Advances on your Account, even if your credit privileges have been terminated, if the Purchase or Cash Advance was authorized by you. Your Account may be used only for valid and lawful purposes. If you use or allow someone else to use your Account for any other purpose you will be responsible for such use and may be required to reimburse us and/or Visa or MasterCard for all amounts or expenses either we or Visa or MasterCard pay as a result of such use.

**Credit Limit.** Your Credit Limit will appear on the accompanying Card carrier and on your Statements. You may not exceed or attempt to exceed your Credit Limit at any time. However, if your Account balance exceeds your Credit Limit for any reason, we may require that you pay us any such excess immediately on demand, rather than in monthly installments. If we have previously honored requests for credit over your Credit Limit, it does not mean that we will honor further overlimit requests. We may offer or accept requests for unsecured credit line increases, which may be subject to a Credit Line Increase Fee Finance Charge.

**Promise to Pay.** By requesting an Account, signing the Card or obtaining credit on your Account, you agree, jointly and severally if more than one person requested the Account, to be obligated for all credit obtained on your Account, whether by you or any of you, or by any Authorized User, as well as for our charges (including Finance Charges) as provided in this Agreement. You also agree to be legally bound by this Agreement. You promise to pay to us all sums you owe on your Account, together with Finance Charges and other charges, in U.S. dollars and in accordance with this Agreement and any hour of receipt and other payment instructions that appear on your Statement. No Cash Advance Check, draft or written instrument we supply to you can be used to make a payment against this Account. No payments shall operate as an accord and satisfaction without prior written approval of a Senior Officer of the Bank. Any payment check that you send to us for less than the full balance due that is marked "paid in full" or with a similar notation or that you otherwise attempt to tender in full satisfaction of a disputed amount must be sent to our Legal Department at 800 Delaware Avenue, Wilmington, DE 19801 with a letter identifying the dispute and that the payment is tendered in satisfaction of the disputed Account balance. We will apply your payments in any lawful manner that we choose.

You may choose, subject to our approval, to make a payment by means of a direct debit or charge to any deposit, savings or credit account of yours ("Payment Account"). By requesting us to process a payment by direct debit or charge to your Payment Account, you hereby authorize us, at our option, to debit your Payment Account by means of an electronic transaction or to submit a paper check or draft to your bank.

You agree that we may convert any payment check or other payment instrument into an electronic debit transaction that will be processed through the Automated Clearing House system ("ACH") and electronically debited from the account on which the check was drawn. Your payment check or other payment instrument will not be physically presented to your bank or returned to you. This is called check truncation or check conversion. However, should you need a copy of a check you may contact us and we will provide it for you. You may be charged a fee for such copy request as allowed by law and as set forth in the section of this Agreement entitled "Our Charges." If you do not want to have your checks truncated you must send a letter to our Customer Service address stating so.



**Statements.** The Statements we will send to you will reflect the activity and our charges on your Account during the Billing Cycle. They will also show your Minimum Payment and the Payment Due Date by which we must receive your Minimum Payment. If there are more than one of you, we will send the Statements only to the person named as the primary account holder in our system.

**Our Charges.** You agree to pay us the following fees in connection with your Account. Such fees will be treated as Purchases on your Account. Our assessment of Late Fees, Overlimit Fees, Returned Payment Fees and Dishonored Check Fees does not mean you are permitted to engage in conduct giving rise to those fees. In fact, you agree not to engage in such conduct.

  1. **Monthly Maintenance Fee.** Your Account is subject to a Monthly Maintenance Fee of $10.00 and it will be imposed for each Billing Cycle or portion thereof your Account is open or has a balance.

  2. **Copying Charges.** If you request duplicates of any Statement, Cash Advance Check or other documents (except in connection with proper and timely written notice of a billing error), we will charge you $3 for each copy we provide, unless applicable state law requires us to charge a lesser amount.

  3. **Late Fee.** We will charge a $32 Late Fee if we do not receive your Minimum Payment by the Payment Due Date shown on your Statement in accordance with any hour of receipt and other payment instructions appearing on such Statement. If your Credit Limit at any time during the Billing Cycle that this fee is charged is greater than $1,000, then this fee will be $35.

  4. **Overlimit Fee.** We will charge a $32 Overlimit Fee each Billing Cycle if either of the following occurs: (i) you seek to authorize or incur any Purchase, Cash Advance or other charge (including Finance Charges and/or fees) against your Account that would cause you to exceed your Credit Limit, whether or not we honor your request; or (ii) your Account balance exceeds the Credit Limit on your Account on any day during the Billing Cycle. An attempted transaction may cause you to incur both an Overlimit Fee and a Dishonored Check Fee in the same Billing Cycle. If your Credit Limit at any time during the Billing Cycle that this fee is charged is greater than $1,000, then this fee will be $35.

  5. **Returned Payment Fee.** If any check, draft, or other payment method we allow, electronic or otherwise, that is submitted as payment for sums owing on your Account, or for any other purpose, is returned unpaid or charged back to us for any reason, we will charge a $30 Returned Payment Fee.

  6. **Dishonored Check Fee.** If we dishonor any Cash Advance Check, draft or other instrument because (i) you use or attempt to use such Cash Advance Check, draft or other instrument while your Account is in Default, (ii) the use or attempted use of such Cash Advance Check, draft or other instrument would cause you to exceed your Credit Limit or (iii) your Account had been terminated either by you or us, we will charge a $30 Dishonored Check Fee. An attempted transaction may cause you to incur both an Overlimit Fee and a Dishonored Check Fee in the same Billing Cycle.

  7. **Reinstatement Fee.** If you or we terminate credit privileges on your Account for any reason, at your request and in our sole discretion we may reinstate your Account privileges. To be eligible for reinstatement you must cure any Default to our satisfaction. If we reinstate your Account, we will charge you a Reinstatement Fee of $50.

  8. **Stop Payment Fee.** If we stop payment on any Cash Advance Check or other Cash Advance at your request, we will charge a Stop Payment Fee of $30. Stop Payment orders are permissible, subject to applicable law, by mail or by phone on any Cash Advance Check or other Cash Advance that has not posted to your Account and is received at such time as to give the Bank a reasonable opportunity to act. To request a stop payment, you must precisely identify the type of Cash Advance Check or Cash Advance, the check number, date of Cash Advance Check or Cash Advance, the exact amount of the item, and the payee. However, at our option, and to the extent that we are able, we may honor Stop Payment requests that do not identify the Cash Advance Check or Cash Advance with as great a degree of precision as that specified in the immediately preceding sentence. Only the person who initiated the Stop Payment may make a release of the Stop Payment request. Oral Stop Payment orders are binding for fourteen (14) days only, unless you confirm the order in writing and we receive it within the fourteen-day period. When a Stop Payment request form is properly signed and returned, the order is effective for six (6) months after the latest date received, accepted, and recorded on your Account, at which time it will automatically expire. The Bank will not be liable for any reasonable delay in accepting and recording a Stop Payment to your Account.

3

9. **Additional Card Fee.** After the initial Card has been issued for your Account, if you request and we agree to provide an additional Card to be issued in the name of an Authorized User or you request and we agree to permit a joint owner be added to your Account, we will charge a $30 Additional Card Fee for the approval of your request and the issuance of another Card to your Account.

10. **Replacement Card Fee.** After a Card has been issued in your name, if you request and we agree to provide a replacement Card, we will charge a Replacement Card Fee of $30 for the Card's replacement. This fee also applies to any Authorized User or joint owner.

11. **Dormant Fees.** After all legally required attempts to return a credit balance have been made, we may begin to assess a Dormant Fee of $10 each month against any unclaimed funds, which may be represented by a credit balance refund instrument that has been returned to us or is not negotiated by you. Dormant Fees will not exceed the amount of any unclaimed funds. When the amount of Dormant Fees equals the amount of the unclaimed funds, your Account will be terminated (if not already terminated) without any further notice or action by us or you. Unless prohibited by applicable law, we will charge your Account for any costs incurred by us associated with complying with state abandoned property laws.

12. **Automated Account Information Fee.** We will charge you the following fees to access our automated account information system through our toll free number. The first two inquiries per Billing Cycle will not incur a charge. Thereafter, the cost will be $0.50 for each separate Account inquiry you make through our automated account information system. You will be charged for each separate inquiry you make even if you make more than one inquiry during the same call. This fee may also be referred and listed on your Statement as an "excessive pinpoint transaction."

13. **Fees for Optional Payment Methods.** If you choose and we allow you to make a payment to your Account by telephone, we assess a $6.95 charge for using our automated systems or a $12.95 charge if your payment is processed with the assistance of one of our associates. If you choose to make a payment to your Account over the Internet through our web site, we will assess a $6.95 charge for each such payment. If you choose and we allow you to make an ACH payment to your account through a pre-authorized direct debit of a deposit account, we will assess a $6.95 charge for each such payment. If you choose and we allow you to make a payment to your Account by credit or debit card, we assess a $10.95 fee for each such payment.

14. **Expedited Payment Fee.** If you choose to make a payment through a third party payment provider (such as, Travelers Express, Western Union, or another payment provider) we will assess a $2 charge for each such transaction.

15. **Miscellaneous Fees.** In accordance with applicable law, we may charge you any reasonable fees for services rendered or for reimbursement of expenses incurred in good faith by us or our agents in connection with your Account, or other reasonable fees in connection with our administering, terminating or reinstating your Account. For example, if you continue to use the Account after we advise you that your credit privileges have been terminated, we may charge you for our costs in listing your Account as ineligible for credit and for any fee imposed on recapture of the Card(s) or Cash Advance Checks.

**Finance Charges.** Your Account is subject to the following FINANCE CHARGES: (1) an Account Origination Fee of $50.00, which will be charged to your Account when your Account is approved; (2) a Cash Advance Fee equal to the greater of $5 or 5% of the Cash Advance, which is imposed whenever we honor any Cash Advance you request and added to your Cash Advance balance (please note that in the Billing Cycle in which a Cash Advance is posted, the Cash Advance Fee will cause the "Annual Percentage Rate" for Cash Advances to exceed the "Corresponding Annual Percentage Rate" for Cash Advances shown on your Statement for that Billing Cycle); (3) a "Periodic Rate Finance Charge," which is calculated on the Purchase and Cash Advance balances outstanding on your Account; (4) a "Credit Line Increase Fee" of $100 (unless you and we otherwise agree), which may be charged in connection with each unsecured credit line increase we approve after your Account is opened; (5) an "Upgrade Fee" of $100 (unless you and we otherwise agree), which may be charged in connection with any product upgrade (i.e. standard to gold); (6) a "Foreign Currency Transaction Fee" equal to 1% of any transaction made in a foreign currency that is converted to U.S. Dollars by Visa or MasterCard (please note that this fee will be added to the same balance to which the foreign transaction is added and that in the Billing Cycle in which a foreign transaction is posted, the Foreign Currency Transaction Fee will cause the

4

"Annual Percentage Rate" to exceed the "Corresponding Annual Percentage Rate" for the balance to which the transaction is added as shown on your Statement for that Billing Cycle; and (7) a "minimum FINANCE CHARGE" of $.50, which will be charged for a Billing Cycle during which there exists any Purchases and/or Cash Advances balance of $1 or greater in your Account.

**Grace Period.** None. Finance Charges accrue on Purchases and Cash Advances and fees beginning on the date the transaction occurs or on the first day of the Billing Cycle the transaction is received by us (whichever is later) or, at our option, the date the transaction is posted to your Account. Periodic Rate Finance Charges continue to accrue until payment in full is received.

**Variable Rates.** The monthly Periodic Rates (and corresponding Annual Percentage Rates) applicable to your Account are variable, unless otherwise disclosed, and may increase or decrease from month to month. These rates are based on the value of an index ("Index") to which we add a margin. The Index applicable to your Account for a Billing Cycle is the highest Prime Rate reported in the "Money Rates" section of The Wall Street Journal on the last business day of the calendar month that ended immediately prior to the first day of the Billing Cycle. An increase in the rate may cause you to pay a larger Periodic Rate Finance Charge and a higher minimum payment. A decrease in the rate may cause you to pay a smaller Periodic Rate Finance Charge and a lower minimum payment.

**Periodic Rate Finance Charge Calculation-Average Daily Balance Method (Including New Transactions) for Purchases and Cash Advances**

(1) To determine the Periodic Rate Finance Charge for Purchases we multiply the monthly Periodic Rate for Purchases by the "average daily balance" for Purchases (including new transactions) for the current Billing Cycle.

(2) To determine the Periodic Rate Finance Charge for Cash Advances we multiply the monthly Periodic Rate for Cash Advances by the "average daily balance" for Cash Advances (including new transactions) for the current Billing Cycle.

(3) The total Finance Charge imposed on your Account each Billing Cycle is the sum of the Periodic Rate Finance Charges as calculated for Purchases and Cash Advances for the current Billing Cycle, all Cash Advance Fees, any Account Origination Fee, any Credit Line Increase Fees, any Upgrade Fees, any Foreign Currency Transaction Fees, any Participation Fee, any minimum Finance Charge, and any other Finance Charge that may be imposed during such Billing Cycle.

(4) Purchases. To get the "average daily balance" of Purchases for a Billing Cycle, we take the beginning balance of Purchases in your Account each day, add any new Purchases, and subtract any payments or credits which are applied to Purchases (treating any negative balances as zero). On the first day of each Billing Cycle, we add to the daily balance of Purchases the unpaid Finance Charges for Purchases for the prior Billing Cycle. (In this way, we compound Finance Charges on Purchases on your Account on a monthly basis.) This gives us the daily balance of Purchases. Then we add up all the daily balances of Purchases for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "average daily balance" of Purchases for a Billing Cycle. There is no grace period in which Purchases may be repaid without incurring a Finance Charge.

(5) Cash Advances. To get the "average daily balance" of Cash Advances for a Billing Cycle, we take the beginning balance of Cash Advances in your Account each day, add any new Cash Advances, and subtract any payments or credits which are applied to Cash Advances (treating any negative balances as zero). On the first day of each Billing Cycle, we add the unpaid Periodic Rate Finance Charges for Cash Advances for the prior Billing Cycle to the daily balance of Cash Advances. (In this way, we compound Finance Charges on Cash Advances on your Account on a monthly basis.) This gives us the daily balance of Cash Advances. Then, we add up all the daily balances of Cash Advances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives us the "average daily balance" of Cash Advances for a Billing Cycle. There is no grace period in which Cash Advances may be repaid without incurring a Finance Charge.

(6) General Periodic Rates. The monthly Periodic Rate for Purchases and Cash Advances are variable and will be the greater of (i) one twelfth of the sum of the Index plus a margin of 15.74% or (ii) 1.999%, which corresponds to an **ANNUAL PERCENTAGE RATE** of 23.99%. The monthly Periodic Rate (and corresponding **ANNUAL PERCENTAGE RATE**) in effect when this Agreement was sent to you are shown on the accompanying Card carrier or insert sent to you with this Agreement.



5

(7) Periodic Rates for Late Payers. Notwithstanding the foregoing, if you fail to pay any Minimum Payment Due in full by the end of the Billing Cycle in which it is due ("Triggering Event"), then the monthly Periodic Rate for Purchases and Cash Advances (including existing balances) will be increased to an adjusted variable monthly Periodic Rate equal to the greater of (i) one twelfth of the sum of the Index plus a margin of 21.74% or (ii) 2.499%, which corresponds to an **ANNUAL PERCENTAGE RATE** of 29.99%. The monthly Periodic Rate (and corresponding **ANNUAL PERCENTAGE RATE**) in effect when this Agreement was sent to you are shown on the accompanying Card carrier or insert. The adjusted monthly Periodic Rate will take effect as of the first day of the Billing Cycle immediately following the Billing Cycle in which the Triggering Event occurred.

If your monthly Periodic Rate (and the corresponding **ANNUAL PERCENTAGE RATE**) is increased as described above, it may subsequently be reduced at our discretion commencing after a review, which occurs at the end of each Billing Cycle, whereby we determine that for twelve consecutive Billing Cycles the following conditions have been met: (1) no payment has been received late, (2) at least the Minimum Payment amount has been received and (3) your Account remained open, eligible to charge and under the Credit Limit. Accounts whose rates are so reduced will be subject to a subsequent increase should future payments be missed in the manner described above.

**Credit Availability.** Payments by guaranteed funds (for example, money orders and cashier's checks) will increase your credit availability on the day after your payment is credited. All other payments may not increase your credit availability until we are assured that the payment has not been dishonored. This could take up to 12 calendar days (or longer).

**Minimum Payments.** You may pay your entire balance at any time, without penalty or premium. Whenever a balance is due, however, each month you must pay us at least the Minimum Payment Due, which we must receive on or before the Payment Due Date shown on the Statement, in accordance with any hour of receipt and other payment instructions shown on the Statement. The Payment Due Date will be 25 days after the Closing Date. The Minimum Payment Due in any monthly Billing Cycle will be equal to the sum of (i) 2.25% of your New Balance plus the total of all Periodic Rate Finance Charges that have accrued in the Billing Cycle for which the Minimum Payment is being calculated (rounded up to the next dollar) or $35, whichever is more (or your entire New Balance if less than $35); plus (ii) all past due amounts; plus (iii) the amount of any Late Fee charged in the Billing Cycle for which the Minimum Payment is being calculated; plus (iv) the amount of any Overlimit Fee charged in the Billing Cycle for which the Minimum Payment is being calculated.



**Terminating Credit Privileges and Terminating Your Account.** You or we can terminate your credit privileges at any time for any reason, including but not limited to when you are in Default under this Agreement. If you or we terminate your credit privileges, you promise that any amounts that you owe us at the time of termination, plus any new Purchases or Cash Advances, plus any Finance Charges and other fees and charges that will continue to be imposed at the rates and in the amounts specified in this Agreement, will be repaid according to this Agreement.

6

You may terminate your Account at any time. In order to terminate your Account, you must give us written notice of your intent to terminate your Account at the address for inquiries shown on your Statement, and pay your outstanding balance in full. Your notice of termination will become effective as soon as we can reasonably act on it. If you request to terminate your Account, but do not pay your outstanding balance in full, your credit privileges will be terminated.

**Default.** You will be in default of this Agreement ("Default") if any of the following occur:

1. You do not make a Minimum Payment on your Account on or before the Payment Due Date;
2. You die or are declared legally incompetent;
3. Any of you becomes insolvent or bankrupt;
4. You exceed or attempt to exceed the Credit Limit;
5. You provide us with false or misleading information or signatures at any time or use your Account in any fraudulent or unlawful manner;
6. You fail to comply with this Agreement;
7. You fail to make any payment or perform any promise in any other agreement or obligation you have with us; or
8. Any judgment, lien, attachment or execution is issued against you, the Deposit or your other property.

If you are in Default, we may immediately terminate your credit privileges on your Account and any other credit account(s) you may have with us. We need not give you notice of termination. We may also demand that you immediately pay us all sums owing on your Account and any other credit account(s) you may have with us, including all unpaid Finance Charges and other charges. We may also combine the outstanding balance on your Account with the balances of any other credit account(s) you may have with us regardless of whether or not that account is past due. Without notice to you, we may also apply any sums then in the Deposit, including interest, if any, you earned on the Deposit, against what you then owe on your Account. We may also demand that you cut the Card(s) and Cash Advance Checks in half and immediately return them to us. Although we may have declared your Account to be in Default, you agree to pay us Finance Charges and other charges at the rates provided in this Agreement until all sums you owe us are paid in full, even if we have demanded that you make immediate payment in full.

If we waive a Default, we do not waive the right to declare the same or another event occurring later as a Default of your Account. If we start collection proceedings to recover amounts you owe us on this Agreement, to the extent permitted by law you agree to pay the reasonable fees of our attorneys who are not our regularly salaried employees, all fees paid to third parties who collect on your debt for us, and all of our court, arbitration or other collection charges.

**Check Return.** If we issue Cash Advance Checks or drafts to you for use with your Account, you agree that we need not return them to you. If you need evidence of any payment made to a merchant or other person by a Cash Advance Check or draft, you agree that a photocopy or similar reproduction we provide to you will be satisfactory for such purposes.

**No Responsibility.** We are not responsible in any way for the failure or refusal of any person to honor a Card, Cash Advance Check or other credit instrument or device we supply to you. We are not responsible if any ATM or other device fails to operate or operates improperly.

**Lost or Stolen Cards or Checks.** You agree to notify us immediately if any Card or Cash Advance Checks are lost or stolen, or if you suspect that they or your Account has been used, or may be used, without your permission.

**Severability and Waiver.** If any provision of this Agreement is invalid or unenforceable under any law, rule or regulation, it shall not affect the validity or enforceability of any other provision of this Agreement. We may delay or waive enforcing any of our rights under this Agreement without losing them.

**Changing This Agreement.** We may change the terms of this Agreement at any time and from time to time (including during the first year the Account is open) and including, without limitation, by increasing existing annual or other fees, adding new fees, adding other new terms or deleting or modifying any existing terms. If we change this Agreement, we will send you a prior notice of the change only if it is then required by law. To the extent permitted by law, a change in terms of this Agreement will apply to existing balances and new transactions on your Account.

7

**Credit Information.** If you believe that any information that we have furnished to consumer reporting agencies about you and your Account is inaccurate, contact us at our customer service address. As permitted by law, we may obtain consumer credit reports and information about you for updates, renewals, extensions of credit, review or collection of your Account and any other permissible purpose. We may furnish information about you and your Account to consumer reporting agencies and others who help service your Account.

**Governing Law.** This Agreement and your Account will be governed by, and interpreted under Federal law and the laws of the State of Delaware without reference to principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Delaware. We make decisions about granting credit to you from and extend credit to you under this Agreement in Delaware. Federal and Delaware law will also apply to any controversy, claim or dispute arising from or relating in any way to the subject matter of this Agreement and/or your Account, including, without limitation, statutory, equitable or tort claims.

**Return of Cards and Cash Advance Checks.** You must surrender the Card(s) and Cash Advance Checks to us upon demand.

**Binding Effect.** If we pay a participating merchant for a Purchase or post a Cash Advance to your Account before we receive actual written notice of your death or declaration of legal incompetency, that transaction will be a valid and binding Account obligation upon you, your estate and your personal representatives.

**Foreign Exchange Rate.** If you make a transaction in a foreign currency, MasterCard or Visa, depending on your card type, will convert the foreign currency transaction amount into a U.S. dollar amount. MasterCard or Visa will act in accordance with their operating regulations or foreign currency conversion procedures then in effect. MasterCard currently uses a conversion rate in effect one day prior to its transaction processing date. Such rate is either a government-mandated rate or a wholesale rate. Visa currently uses a conversion rate in effect on its central processing date. Such rate is either a rate it selects from the range of rates available in wholesale currency markets, which may vary from the rate Visa receives or the government mandated rate. We may impose a Foreign Currency Transaction Fee as described in the Finance Charges section of this Agreement.

**Telephone Monitoring.** You consent and authorize us and any of our affiliates, servicing companies or associates to monitor and/or record any of your telephone conversations with our representatives or the representatives of those companies.

**Your Information.** You agree to provide us with accurate and updated information necessary to communicate with you and to send you information about your Account. Your Cards, Statements and any other notices will be sent to you at the address in our files. If you change your name, address, telephone numbers or e-mail address, you must notify us promptly. We may at our option accept corrections or updates to your personal information from the post office and others. You agree that in the event that we do not have valid personal information on file we may obtain such information from a third party. You agree that we may send information to you about your Account by e-mail and that such information may include, among other things its delinquency or overlimit status. If you do not want us to send account information by e-mail, please send a written request to our customer service address asking us not to do so.

**We May Transfer Your Account.** We may at any time, and without notice to you, transfer, assign or sell your account, any sums due on your account, this Agreement, or our rights or obligations under your account or this Agreement to any person or entity. The person or entity to whom we make any such sale, assignment or transfer shall be entitled to all of our rights and/or obligations under this Agreement, to the extent sold, assigned or transferred.

**ARBITRATION**

**Arbitration.** Arbitration is a method of deciding disputes outside the court system. This Arbitration Provision governs when and how any disputes you and we may have will be arbitrated instead of litigated in court.

**Certain Definitions.** Certain capitalized words used in this Arbitration Provision have special meanings:

"We," "us," and "our" do not mean just Applied Card Bank (the "Bank"). These terms also include: (1) any parent company of the Bank, all companies owned by, controlled by or



under common ownership or control with the parent company or the Bank, including but not limited to Applied Card Systems, Inc.; (2) any prior issuer of the Account; (3) any company to which we transfer our rights under this Agreement; and (4) all of the employees or other individuals who manage or own these companies. Finally, if either you or we elect to arbitrate any Claim you bring against us, these terms include any other persons or companies who you make Claims against in the same proceeding.

"Claim" means any dispute between you and us that cannot be resolved without a judicial or arbitration proceeding and arises as a result of or has anything at all to do with: (1) your Account; (2) the events leading up to your becoming an Account holder; (3) this Agreement (including this Arbitration Provision); (4) any prior credit account or agreement relating to such account; or (5) your relationship with us. This includes disputes relating to any products, insurance or other services offered to you as an Account holder. This includes disputes about whether this Arbitration Provision is valid or binding; about whether or when it applies; and whether a dispute is arbitrable. It includes disputes relating to constitutional provisions; statutes; ordinances; regulations; court decisions; compliance with the Agreement or a related contract; and wrongful acts of every type (whether intentional; fraudulent; reckless; or just negligent). It includes requests for money, for orders requiring you or us to take certain actions (which are sometimes referred to as "injunctive relief"), for declarations of legal rights and for any other kind of relief. This Arbitration Provision applies to Claims that arise prior to the effective date of this Arbitration Provision. Notwithstanding the foregoing, any dispute concerning the validity or effect of the part of this Arbitration Provision captioned "NO CLASS ACTIONS OR SIMILAR PROCEEDINGS" shall not be subject to this Arbitration Provision and shall be resolved by a court and not an arbitrator.

"Administrator" means the National Arbitration Forum, ("NAF"), P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com, or the American Arbitration Association ("AAA"), 335 Madison Avenue, New York, NY 10017, www.adr.org, provided that no arbitration may be administered, without the consent of all parties to the arbitration, by any organization that has in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Provision. The arbitrator will be selected under the Administrator's Rules. You can select the Administrator if you give us written notice of your selection with your notice that you are electing to arbitrate any Claim or within 20 days after we give you notice that we are electing to arbitrate any Claim. If you do not select the Administrator on time, we will select one. If for any reason the Administrator you or we select is unable or unwilling to serve or continue to serve as Administrator, you will have 20 days to select a different Administrator.

Starting an Arbitration. You or we can give written notice of an intention to begin arbitration of a Claim or Claims or to require arbitration of the other party's Claim or Claims. This notice can be given by one party even if the other party has begun a lawsuit. If such a notice is given, any Claim will be resolved by arbitration under this Arbitration Provision and the Administrator's Rules that are in effect at the time the Claim is filed with the Administrator. The arbitrator must be a lawyer with more than 10 years of experience or a retired judge, unless you and we agree otherwise. A copy of the Claim form may be obtained from the Administrator or from us. A party who has asserted a Claim in a lawsuit may still elect arbitration with respect to any Claim that is later asserted in the same lawsuit by any other party. All doubts about whether to arbitrate a Claim shall be resolved in favor of arbitration.

We will not elect to arbitrate an individual Claim that you bring against us in "small claims" court (or the equivalent court in your state). However, we may elect to arbitrate a "small claims" court Claim that is later transferred, removed or appealed to any different court.

**IMPORTANT LIMITATIONS**

If you or we elect to arbitrate a Claim, neither you nor we will have the right to pursue that Claim in court or have a jury decide the Claim. Also, the ability of a party to obtain information from the other party and to appeal is more limited in an arbitration than in a lawsuit. Other rights that you or we would have in court may also not be available in arbitration. The fees charged by the administrator may be higher than the fees charged by a court.

**NO CLASS ACTIONS OR SIMILAR PROCEEDINGS**

If you or we elect to arbitrate a Claim: (1) neither you nor anyone else on your behalf can pursue that Claim in court or in an arbitration proceeding on a class-wide or representative basis; and (2) Claims brought by or against one account holder (or joint account holders) may not be



brought together with Claims brought by or against any other account holder. The arbitrator shall have no authority to hear or decide an arbitration on a class-wide or representative basis.

**Arbitration Location and Costs.** Any arbitration hearing that you attend will take place at a location reasonably convenient to your residence. In the event that you file a Claim against us and you cannot afford to pay the fees charged by the Administrator and the arbitrator or if you believe that such fees are too high, and you cannot obtain a fee waiver, we will consider any reasonable written request by you for us to advance the fees. We will pay any fees or expenses we are required to pay by law. The arbitrator will decide who will be ultimately responsible for paying those fees. In the event that you file a Claim against us, in no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the Claim had been resolved in a state court with jurisdiction. In the event that we file a Claim against you, the arbitrator will decide who is responsible for paying all costs for arbitrating the Claim.

**Governing Law.** This Agreement involves interstate commerce and this Arbitration Provision is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1 et seq. The arbitrator must follow: (1) the FAA; (2) the substantive law, consistent with the FAA, related to any Claim; (3) statutes of limitations; and (4) claims of privilege recognized at law. Upon the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award. The arbitrator will determine the rules of procedure and evidence to apply, consistent with the FAA, the Administrator's Rules and this Arbitration Provision. The arbitrator shall not apply federal, state or local rules of procedure and evidence or state or local laws concerning arbitration proceedings.

**Obtaining Information.** After an arbitration has been started, in addition to a party's right to obtain information from the other party under the Administrator's Rules, either party may request the arbitrator in writing to allow that party to obtain more information from the other party. A copy of such request must be provided to the other party. That party will then have the chance to object in writing. The objection must be sent to the arbitrator and the other party. The arbitrator will decide the issue, in his or her sole discretion.

**Effect of Arbitration Award.** Any appropriate court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding, except for any appeal right under the FAA and except for Claims that involve requests for monetary relief exceeding $100,000 or requests for injunctive or declaratory relief that could cost any party more than $100,000. For these large Claims, any party may appeal the award to a three-arbitrator panel appointed by the Administrator. That panel will consider all over again any part of the initial award that any party asserts was incorrectly decided. The decision of the panel will be by majority vote and will be final and binding, except for any appeal right under the FAA. Unless applicable law provides otherwise, the fees charged by the Administrator and the arbitrators for such an appeal will be paid by the appealing party, regardless of who wins the appeal. However, we will consider any reasonable written request by you for us to pay such fees. All other provisions of this Arbitration Provision shall apply to any appeal to a three-arbitrator panel and any reference in this Arbitration Provision to a single arbitrator shall apply to the three-arbitrator panel.

**Continued Effect of Arbitration Provision.** This Arbitration Provision governs, notwithstanding any prior arbitration provision between you and us. This Arbitration Provision will remain in force no matter what happens to you or your Account. For example, it will remain in force even if: (1) your credit privileges are ended or put on hold; (2) you close your Account; (3) you repay your entire Account balance; (4) we begin a lawsuit to collect amounts we think you owe; or (5) you become bankrupt or insolvent or a bankruptcy or insolvency proceeding is begun, to the extent consistent with applicable bankruptcy law. If any portion of this Arbitration Provision cannot be enforced for any reason, the rest of this Arbitration Provision will continue to apply. However, if the part of this Arbitration Provision captioned "NO CLASS ACTIONS OR SIMILAR PROCEEDINGS" is struck in a proceeding brought as a class action or representative action, the entire Arbitration Provision (other than this sentence) shall be null and void in such proceeding, provided that we and you retain the right to contest through appeal or further available judicial proceedings any determination with respect to this part of the Arbitration Provision. In the event of any conflict or inconsistency between this Arbitration Provision, on the

one hand, and the Administrator's Rules or other provisions of this Agreement, on the other hand, this Arbitration Provision will govern.

**Rejection of Arbitration Provision.** You may reject this Arbitration Provision, (and any prior arbitration provision between you and us) by sending us a notice ("Rejection Notice") that we receive within thirty (30) days after you open your Account. Any Rejection Notice must include your name, address and telephone number and must be signed by you. You must mail your Rejection Notice or send it by messenger service (such as Federal Express) to us at our Legal Department at 800 Delaware Avenue, Wilmington, DE 19801. In the event of any dispute concerning whether you have provided a timely Rejection Notice, you must provide a signed receipt as confirmation. This is the only method you can use to reject this Arbitration Provision.

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet at P.O. Box 17125, Wilmington, DE 19850-7125, as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about. If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES
### AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If we didn't make a mistake, you may have to pay Finance Charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of property or services that you purchase with a credit Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### YOUR LIABILITY FOR UNAUTHORIZED USE OF YOUR ACCOUNT

You may be liable for unauthorized use of your Account. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft or possible unauthorized use. In any case, your liability will not exceed $50. To notify us of the loss, theft or possible unauthorized use of your Account, call us at (800) 556-5678, 24 hours a day or write to us at the address noted in the paragraph "HOW TO CONTACT US".

### HOW TO CONTACT US

For general inquiries we can be reached in writing at: Applied Card Bank, P.O. Box 17125, Wilmington, DE 19850-7125. Or, you can call our Customer Service Department at (561) 982-9111. Automated account information is available 24 hours a day with representatives available between the hours of 7:00 a.m. to 11:30 p.m., Eastern time, seven days a week. Payments should be mailed to the address listed on your Statement.

### APPLIED CARD BANK
### STATEMENT SAVINGS ACCOUNT DEPOSIT RULES AND REGULATIONS

In these Deposit Rules and Regulations (the "Rules"), "we" are Applied Card Bank of Wilmington, DE. "You," "your" and "yours" refer to the person or persons whose Visa or MasterCard credit Card account ("Account") is secured by this Statement Savings Account (the "Deposit").

**AUTHORIZATION.** You authorize us to recognize your signature supplied in the Credit Card application or other such documents that are related to the Deposit or your Account in the payment of funds or the transaction of business affecting the Deposit. We may refuse payment if, in our opinion, any signature provided to us does not conform to your signature on file.

**JOINT ACCOUNT.** If you have a Joint Account the Deposit will be deemed a Joint Account with the Right of Survivorship. Each of you will be deemed to own an equal share and each has the right to make deposits and withdrawals. Upon the death of any signer, the Deposit will become the property of the survivor.

**DEPOSITS.** You can make additions to the Deposit by mail at any time. To assure proper crediting, you should not include the deposit in the same envelope in which you are making payment on the Account.

**WITHDRAWALS.** You can make withdrawals from your Deposit only by mail. Because your Deposit secures payment of sums owing on your Account, we need not honor any withdrawal order until the latest of the following events: (i) 10 business days after the time all sums owed to us on your Account are paid in full, (ii) 10 weeks from the time we receive from you all unexpired credit Cards and cash advance checks, cut in half, or (iii) 10 weeks from the time your Account is terminated.

**INTEREST.** We pay interest monthly on the Deposit at a rate that may change from time to time. The current interest rate, as well as information regarding your Deposit, will appear on your Account statements no less often than quarterly.

**ASSIGNMENTS PROHIBITED.** You may not assign the Deposit to anyone other than us.

**GOVERNING LAW.** These Rules and your Deposit will be governed by and interpreted under Federal law and the laws of the State of Delaware without reference to the principles of conflict of laws. The legality, enforceability and interpretation of these Rules will be governed by such laws. These Rules are entered into between you and us in Delaware. Federal and Delaware law will also apply to any controversy, Claim or dispute arising from or relating in any way to the subject matter of these Rules and/or your Deposit, including, without limitation, statutory, equitable or tort claims.

**AMENDMENTS.** We may change the terms of these Rules from time to time, including, without limitation, by adding new terms or by deleting or modifying existing terms. If we change the Rules, we will send you a prior notice of the change only if it is then required by law. To the extent permitted by law, a change in terms of these Rules will apply to existing balances and new transactions on your Deposit.

 Wilmington, DE
© 2006 Applied Card Bank. All Rights Reserved. Member FDIC.